81 U.S. 676
 20 L.Ed. 719
 14 Wall. 676
 WILLARD
v.
PRESBURY.
 December Term, 1871
 
 APPEAL from a decree of the Supreme Court of the District of Columbia; the case being this:
 An act of Congress, passed February 23d, 1865, provides:
 'That the corporation of the city of Washington shall have full power and authority to levy taxes on particular wards, parts, or sections of the city for their particular local improvements, and to cause the curbstones to be set, the foot and carriage-ways (or so much thereof as they may deem best) to be graded and paved.'Another clause in the same act provides:
 'That the corporation, &c., is hereby authorized to lay and collect a tax upon all property bordering upon each street or alley that may be paved, sewered, lighted, cleaned, or watered by said corporation, in accordance with the provisions of this act.'
 On the 12th October, 1865, the city authorities of Washington passed an ordinance which provided for the grading and paving a certain part of Fourteenth Street (including a part which passes on the east side of the hotel known as Willard's, at the northwest corner of Pennsylvania Avenue and Fourteenth Street), with a particular kind of pavement referred to; to replace or reset the curbstones, repair or renew the sidewalks or foot-pavements, &c. And to defray the expenses incurred, the ordinance directed a special tax to be levied under the authority of the above quoted act of Congress of the 23d February, 1865, on all lots and parts of lots along the said Fourteenth Street, the said taxes to be assessed and collected in the same manner as provided by an act of May 23d, 1853.
 The street, including that part running along the east side of Willard's Hotel, having been repaved under the ordinance, the city assessed $1835 on the hotel property, of which at this time, Presbury, Sykes & Chadwick were lessees, from the owners, J. C. and H. A. Willard, under a lease which contained a covenant that the lessees should pay all taxes imposed by Congress or the city authorities on the property.
 Hereupon, Presbury, Sykes & Chadwick filed their bill in the court below against J. C. Willard, setting forth their lease and the covenant just mentioned, that the portion of Fourteenth Street in front of the premises had been graded and paved, and that the pavement was in good condition and repair; that, notwithstanding this, the common council of the city passed the ordinance already mentioned, directing that Fourteenth Street, including the portion referred to, should be regraded and repaved, although as to this portion it was wholly unnecessary, and had not been called for by the adjacent proprietors of lots; that the ordinance, as originally drafted, omitted this portion, and would have thus been adopted had it not been for the misrepresentations of the defendant, J. C. Willard, and a contract made by him with the mayor and common council in respect to the payment of the expenses; that the defendant, the said Willard, persuaded the authorities to include the portion of the street mentioned, by representing that he and his brothers were the exclusive owners of all the property contiguous to it; that they all desired the work to be done; and that he and they would be required to pay all the assessments, he (the bill alleged), the said Willard, well knowing that the said representations were untrue, and that the said work was not necessary, and was not desired by the adjacent owners; and also, well knowing that, by the covenant in their lease, the complainants, lessees of the hotel, would be required to pay the assessments. The bill further charged that J. C. Willard agreed with the mayor and common council that if they would pass the ordinance requiring the work to be done he would pay the full amount of the expense assessed; that the grading and paving had since been completed, and the assessments made upon the adjacent owners, and the sum of $1835 had been charged upon the property included in the lease, which the said defendant refused to pay, and payment of which he caused to be demanded of them, the complainants. The bill prayed that the common council be enjoined from collecting the assessment, or that it be set aside for irregularity, or, if not, that the defendant, the said Willard, be decreed to pay it.
 There were four witnesses examined in the case. Mr. Wallach, who was the mayor at the time the ordinance was passed and the work done, was one. He stated in substance that Willard had an interview with him while the ordinance was pending in the city councils, and expressed great anxiety for its passage; that he made no representation to him while the bill was pending; that after the ordinance was passed, and while the work was in progress, it was not the intention of the witness to regrade and pave the portion of the street to which Willard's hotel was adjacent;* that that portion had been paved within a few years with cobble-stones; that the defendant urged him to pave it with the new material; and, as an inducement, said that he had the entire portion of one side to pay for; and that he and his brother owned a larger portion of the property fronting on it than any one person. On the witness suggesting that there might be objections on the part of Mrs. Farnum and Mrs. Burke, the owners of the remaining portion, he said that if they objected he would be responsible for their assessments. The witness stated that he thinks that he would not have had the paving done at that time had it not been for the representations and urgent request of the defendant; that he, the mayor, had full power in the matters given him in the ordinance. The witness also stated there was no agreement between him and the said defendant, that he was to be personally responsible for the assessments or cost of the pavement. Willard gave him to understand that he would have to bear the expense of the pavement in front of his property.
 Mr. Owen, an alderman at the time, also a witness, stated
 Mr. Chadwick, one of the complainants, was also called as a witness. He stated that before taking the lease he took a full survey of the property and its surroundings; that the pavement of Fourteenth Street in front was in good condition, and when taken up was the best in the city. He received a notice from J. C. & II. A. Willard, the landlords, to take up the pavement of the street and put a new one down, at which he was greatly surprised; and that shortly after, workmen proceeded to take up the old pavement; that he had no knowledge of the ordinance till the work was begun; that the street at the time needed no repair.
 Mr. Ball, called as a witness, simply stated, in answer to a question, that the street, at the time the old pavement was taken up, was in the best condition.
 The court, upon this evidence, decreed that the defendant, Willard, should be liable personally to pay the assessments levied upon the premises leased to the complainants, directing that, if not paid in ten days, the city authorities should proceed and sell his reversionary interest therein to pay the same. From this decree Wilard appealed.
 Messrs. W. D. Davidge and W. F. Mattingly, for the appellant; Messrs. R. T. Merrick and R. J. Brent, contra.
 Mr. Justice NELSON delivered the opinion of the court.
 
 
 1
 Some question has been made by the counsel for the appellees as to the power of Congress to confer upon the city authority to assess upon the adjacent proprietors of lots the expense of repairing streets with a new and different pavement or repairing an old one. It is asserted that this should be a general tax on the city. But the power, we think, cannot well be denied. The Constitution confers upon Congress the authority to exercise exclusive legislation over this District.**
 
 
 2
 The bill seeks to compel Willard to pay the tax levied on the hotel (of which the appellees are lessees, and bound by their covenant to pay the same), upon the ground, 1st. That he procured the passage of the city ordinance to make the improvement in the street by fraudulent misrepresentations to the mayor and common council, with the intent to cast upon the lessees the burden of the tax, and to benefit his own reversionary interest in the premises; and
 
 
 3
 2d. That he had agreed with the mayor and common council, if they would pass the ordinance requiring the improvements to be made, he would pay the full amount of any assessments or tax for and on account of the expense of the same.
 
 
 4
 On looking into the proofs in the record it will be seen that this second ground for charging Willard, the appellant, with the expense of the improvements is wholly unsustained. No such agreement was made as alleged in the bill.
 
 
 5
 And as it respects the first ground, the only evidence in support of it is that, pending the ordinance before the city council, in a conversation with Alderman Owen, he said that he and his brothers would have to pay for most of the work, and that the other property owners along there were fully able to pay their proportions, except as to the Burch property, and if there was any objection as to that he would pay for it himself—that portion of it. The witness said that he knew of no inducements held out by Willard to procure the passage of the ordinance, except as stated above.
 
 
 6
 Without stopping to inquire whether a misrepresentation simply to one of the aldermen constituting the board, to induce him to pass an ordinance for the improvement of a street, could be regarded as making out a case of misrepresentation that would subject the guilty party to any responsibility for its passage, or whether, if such responsibility was established, the appropriate remedy would not be an action at law, it is sufficient to say, in the present case, that there is no evidence in the record showing that the representations made were untrue, and hence the first ground for subjecting the appellant also fails.
 
 
 7
 We say nothing as to the representations made to the mayor after the passage of the ordinance and while the work was in progress, or how far these might subject the appellant to liability, as that evidence is not pertinent to the issue made in the bill before us.
 
 
 8
 DECREE REVERSED and CAUSE REMITTED, with directions to
 
 
 9
 DISMISS THE BILL.***
 
 
 
 *
 The portion namely between Pennsylvania Avenue and F Street. that he drew the original ordinance for paving the streets, and omitted the portion of the street to which Willard's Hotel was adjacent; that defendant presented an ordinance which included this portion, and that the witness amended his so as to include it. He had omitted this portion as it was well enough paved with cobble-stones. He had a conversation with defendant while the ordinance was pending. He seemed vexed at the delay, and said that he and his brothers would have to pay for most of the work, and that the other property-owners were fully able to pay their proportion, except as to the Burch property, and, if that was any objection, he would have to pay it himself. The witness stated that he knew of no inducements held out by Willard to procure the passage of the ordinance, except what he had stated.
 
 
 **
 Article 1, § 8.
 
 
 ***
 This case was adjudged at December Term, 1869.