## SOUTHERN RAILWAY COMPANY v. SAMUEL E. GREENE.

ERROR TO THE SUPREME COURT OF THE STATE OF ALABAMA.

No. 450.   Argued December 16, 17, 1909.—Decided February 21, 1910.

Equal protection of the laws means subjection to equal laws applying alike to all in the same situation.

A corporation is a person within the meaning of the equal protection provision of the Fourteenth Amendment.

A corporation which comes into a State other than that in which it is created, pays taxes thereto and acquires property and carries on business therein, is within the jurisdiction of that State, and, under the Fourteenth Amendment, entitled to protection against any statute of that State that denies to it the equal protection of the laws.

Arbitrary selection cannot be justified by calling it classification in the absence of real distinction on a substantial basis; and a classification for taxation that divides corporations doing exactly the same business with the same kind of property into foreign and domestic is arbitrary and a denial of equal protection of the laws.

Whatever power a State may have to exclude or determine the terms of the admission of foreign corporations not already within its borders, it cannot subject a foreign corporation which has already come into the State in compliance with its laws and has acquired property of a fixed and permanent nature to a new and additional franchise tax for the privilege of doing business which is not imposed upon domestic corporations.   It would be an unconstitutional denial of equal protection of the laws under the Fourteenth Amendment; and so held as to the franchise tax on foreign corporations of Alabama of 1907.

49 So. Rep. 404, reversed.

ACTION was brought in the City Court of Birmingham, Alabama, by the Southern Railway Company to recover the sum of $22,458.36, for so much money received by the defendant as judge of the Probate Court of Jefferson County, Alabama, which sum the plaintiff claimed was wrongfully exacted from.

it under the provisions of the act of March 7, 1907. This sum
is the amount taxed against the Southern Railway Company
under the said legislative act, and, under the practice in Ala-
bama, if illegally exacted, it may be recovered.

This act is found in the Code of Alabama of 1907, vol. 1,
page 986, §§ 2391 to 2400 inclusive. It provides for the pay-
ment of an annual franchise tax to the probate judge by every
foreign corporation authorized to do business within the State,
in which it has a resident agent, with certain exceptions, for
the use of the State; upon the actual amount of the capital
stock employed by it in the State; in the amount of $25 of the
first $100, 5% on the next $900, and one-tenth of 1% on all the
remaining amount of capital so employed.

Provision is made for the assessment of the tax by proceed-
ings before the probate judge, with an appeal to the Circuit
Court in certain cases. The statute enacts that no foreign
corporation required to pay a tax under this statute shall do
any business in the State of Alabama not constituting inter-
state commerce, or maintain or commence any action in any
of the courts of the State, upon contracts made in the State
other than contracts based upon interstate commerce, unless
such corporation shall have paid said tax within sixty days
after the same shall have become due. The payment of the
tax in one county shall be sufficient, notwithstanding the
corporation shall do business or have a resident agent in more
than one county.

The payment of the franchise tax, required by this statute,
does not exempt any corporation paying the same from pay-
ment of the regular license or privilege tax specified or re-
quired for engaging in or carrying on business, the license for
which is required from individuals, firms or corporations. In
addition to the amount of the franchise tax required to be
paid to the State, such foreign corporation shall pay to the
county, for the use of the county, an amount equal to one-half
of the amount paid by it to the State. Loans of money upon
which a mortgage tax is paid are deducted from capital em-

ployed in the State upon which there shall be paid the recording privilege tax required by law.

The complaint averred that the act is unconstitutional and void, as it impaired the obligation of a contract between the plaintiff and the State of Alabama, and in that it deprived the plaintiff of its property without due process of law, and denied to it the equal protection of the laws.

Plaintiff averred that it is a corporation created under the laws of the State of Virginia, and as such authorized to lease, use, operate and acquire any railroad or transportation company, then or thereafter incorporated by the laws of the United States, or any of the States thereof. That it thus organized in February, 1894; and has since carried on the business of acquiring, owning and operating lines of railroads in various States, and conducting interstate and intrastate transportation of persons and property. That, in conformity with the laws of the State of Alabama, on July 16, 1894, it filed in the office of the Secretary of State a copy of its charter, and designated an agent upon whom service could be made, and that at the same time it paid to the treasurer of the State of Alabama the sum of $250, being the sum required as a license fee for beginning business in the State. It avers that after thus complying with the laws of Alabama it commenced carrying on its authorized business within the State, and has therein carried on the same business ever since; that between the time of entering the State as aforesaid and the year 1899 it purchased and acquired, as permitted and authorized by the laws of Alabama, various lines of railroad and the franchises under which they had been built and operated, which lines are connected with and continuous with other lines owned by the plaintiff.

The complaint states that these lines of railroad situated in the State of Alabama had been theretofore constructed under its laws by duly authorized corporations, and the complaint contains a list of such lines; that it acquired said lines, paying large sums of money therefor, in pursuance of and re-

liance upon the laws of the State of Alabama; that since such
acquisition it has continued to operate such lines of railroad,
transacting a large amount of business thereon, both interstate
and intrastate, and has expended large sums of money in the
maintenance and improvement thereof.

Plaintiff avers that from time to time ownership taxes,
similar to those assessed against other persons and corpora-
tions, have been assessed against it, all of which the plaintiff
has paid. It has also paid from year to year the license tax
exacted of it and other persons and corporations operating
railroads in the State of Alabama under § 3489 of the Code of
Alabama of 1896, under § 1128 of the Code of Alabama of
1886. It has also paid on account of its ownership of such rail-
road, taxes assessed against it under the act of March 7, 1897,
taxing the franchises or intangible property, in the State, of
every person and corporation engaged in transporting persons
or property of any railroad therein. It has also paid the
license fee, and has procured the license provided for by the
act of the legislature of the State of Alabama, approved
March 7, 1907, entitled, "An act to further regulate the doing
of business in Alabama by foreign or non-resident corpora-
tions, or corporations organized under or by authority of the
law of any other State or government than the State of Ala-
bama, and to fix a punishment for the violation thereof."

Plaintiff states that all these exactions have been made by
the State of Alabama upon corporations owning and operating
railroads in Alabama, without regard to whether the corpora-
tion owning and operating such railroad was a domestic corpo-
ration or a corporation organized under the laws of some other
State, with the sole exception of the license fee last above
mentioned, which is a nominal amount ($10 per annum), ex-
acted from foreign corporations only for mere police purposes,
in order that there may be a registration of such foreign corpo-
ration, doing business in Alabama, in the office of the Secretary
of State. Plaintiff avers that the legislative act of March 7,
1907, under which it was compelled to pay the said sum of

$22,458.36 does not apply to persons or corporations of the State of Alabama owning the same character of property and carrying on the same kind of business as is owned and carried on by corporations organized under the laws of other States, nor is there any similar exaction against domestic corporations owning such property and engaged in the same character of business.

Plaintiff recites the proceedings before the probate judge of Jefferson County, resulting in the finding that the capital of the plaintiff employed in the State of Alabama was $14,903,246, and the assessment thereon of the tax of $22,458.36, as aforesaid, its payment under protest, and prays judgment for its recovery. A demurrer to the complaint was sustained and judgment rendered for defendant. Upon appeal the Supreme Court of Alabama affirmed the judgment. 49 So. Rep. 404.

*Mr. Alfred P. Thom*, with whom *Mr. Alexander Pope Humphrey* and *Mr. James Weatherly* were on the brief, for plaintiff in error.

*Mr. Gregory L. Smith*, with whom *Mr. H. L. Stone* was on the brief, for Louisville and Nashville Railroad Company, plaintiff in error in No. 451, argued simultaneously herewith.[1]

*Mr. Robert E. Steiner, Mr. Leon Weil, Mr. T. M. Cunningham, Jr., Mr. A. R. Lawton* and *Mr. Horace Stringfellow*, for Central of Georgia Railway Company, plaintiff in error in No. 466, submitted.[1]

When a corporation is organized under a general law, the powers conferred by such law become its charter. *Granger Ins. Co. v. Kamper*, 73 Alabama, 242.

Generally speaking, the rights of a corporation are determined by the laws in force when it came into being. *Bibb v. Hall & Farley*, 101 Alabama, 98.

The domestic corporations, whose property and franchises

---

[1] For decisions in Nos. 451 and 466, see p. 418, *post*.

were purchased by plaintiff in error, had charter rights to do an interstate and intrastate business in Alabama, and these could not be impaired by legislation. *Dartmouth College* v. *Woodward*, 4 Wheat. 518; *Alabama* v. *Bible Society*, 134 Alabama, 634.

This is true whether the corporations were formed under special or general laws. *Salt Co.* v. *East Saginaw*, 13 Wall. 378; *Stanislaus County* v. *San Joaquin*, 192 U. S. 206.

In a case involving the Constitution of the United States, the Federal courts will not follow the decisions of the state courts construing an act alleged to violate the Federal Constitution but will construe such act for themselves. *Douglas* v. *Kentucky*, 168 U. S. 500; *Vicksburg* v. *Waterworks*, 202 U. S. 467; *Powers* v. *Detroit & Grand Haven Ry.*, 201 U. S. 556.

The provisions of § 23, Art. I, const. of Alabama, of 1875, forbidding the grant of any irrevocable special franchises does not authorize the revocation at will of any franchise granted, but only their revocation upon reasonable conditions fixed by law. *Houston* v. *City Railway*, 19 S. W. Rep. 129.

When an instrument makes general provisions for a subject and then provides specially for a part of that subject, the special provisions as to such subject must prevail. *State* v. *Inhabitants of Trenton*, 38 N. J. Law, 64.

When an instrument contains two inconsistent provisions, the latter of such provisions must prevail over the former. *Hand* v. *Stapleton*, 135 Alabama, 162.

Charter rights cannot be altered, amended or revoked under the powers reserved in the constitution of Alabama, so as to work an injustice to stockholders. *Vicksburg* v. *Waterworks*, 202 U. S. 465.

Under the right reserved in a constitution to alter, amend or repeal the charter, the alterations must be reasonably made in good faith, and must be consistent with the scope and object of the incorporation. *Stanislaus County* v. *San Joaquin C. & I. Co.*, 192 U. S. 213.

A State cannot, under such reserved rights, take away or

destroy rights, which by a legitimate use of the powers granted have become vested in a corporation. *Miller* v. *State*, 15 Wall. 498.

A State cannot, under the reserved rights, alter, amend or repeal a charter by imposing arbitrary burdens upon one set of persons or corporations within its jurisdiction, not imposed upon others, and not justified by the character of the business in which such corporations are engaged in reference to such burdens. *S. & N. Ala. R. R. Co.* v. *Morris*, 65 Alabama, 193; *Gulf, Col. & Santa Fe Rwy.* v. *Ellis*, 165 U. S. 151; *Phœnix Carpet Co.* v. *State*, 118 Alabama, 143; *Montgomery* v. *Kelly*, 142 Alabama, 557; *Cotting* v. *K. C. Stock Yards*, 183 U. S. 102; *Magoun* v. *Ill. Trust & Sav. Bk.*, 170 U. S. 293.

The imposition of such burdens does not constitute an alteration, amendment or repeal within the reserved power. *Vicksburg* v. *Waterworks*, 202 U. S. 465.

Where a corporation has power in its charter to sell and assign its franchises, such franchises are as inviolable in the hands of the assignee as they were in the hands of the original corporation. *Mobile* v. *L. & N. R. R. Co.*, 84 Alabama, 115; *Wilmington R. R.* v. *Reid*, 13 Wall. 267; *Pennsylvania College Cases*, 13 Wall. 212; *Willamette Mfg. Co.* v. *Bank*, 119 U. S. 191.

The effect of §§ 1169 and 1170 of the Code of Alabama of 1896 was to authorize the domestic corporations to sell their franchises, and was in the nature of an amendment of their charters. *L. & N. R. R. Co.* v. *State*, 45 So. Rep. 302.

The acceptance of a franchise granted by the State is a good consideration for its grant. *Alabama* v. *Bible Society*, 134 Alabama, 634.

The provisions of § 1169, Code, 1896, are similar to the provisions found in the case of *American Smelting Co.* v. *Colorado*, 204 U. S. 113, and constituted a contract between the State and the plaintiff in error.

The tax is upon the entire business, and it does not make any difference whether it is called a property tax or a privilege

tax. The provisions of the Constitution of the United States cannot be evaded by the name under which the tax is assessed. *Gal. & Harrisburg Ry. Co.* v. *Texas*, 210 U. S. 237; *Wilmington R. R. Co.* v. *Reid*, 13 Wall. 264.

If there was no contract between the State of Alabama and the plaintiff in error, but only a contract of sale between the domestic corporations, and the plaintiff in error, such contract would be protected by the Constitution of the United States. *Green* v. *Biddle,* 8 Wheat. 1; *Von Hoffman* v. *City of Quincy,* 4 Wall. 549.

The statute complained of denies to the plaintiff in error the equal protection of the laws.

A statute which places upon a person within the jurisdiction of the State arbitrary burdens not placed upon other persons doing the same kind of business under the same circumstances, denies to the person upon whom it is placed the full protection of the laws. *Raymond* v. *Chicago Traction Co.,* 207 U. S. 35; *Connolly* v. *Union Sewer Pipe Co.,* 184 U. S. 558; *Cook* v. *Marshall County,* 196 U. S. 274; *Cotting* v. *K. C. Stock Yards,* 183 U. S. 105.

The State may tax certain property or certain callings, so long as there is no arbitrary discrimination against persons engaged in said callings under like circumstances, but when a law imposes arbitrary burdens upon one set of persons or corporations, within the jurisdiction of the State, not imposed upon others and not justified by the character of the business of such persons or corporations with reference to such burdens so as to form a just basis for their imposition, it denies to such persons or corporations the equal protection of the law. Cases *supra,* and *Armour Pkg. Co.* v. *Lacey,* 200 U. S. 235; *Kehrer* v. *Stewart,* 197 U. S. 69; *Home Ins. Co.* v. *New York,* 134 U. S. 606; *Magoun* v. *Illinois Trust Co.,* 170 U. S. 293.

Even where a foreign corporation is within the domain of the State only by license, it cannot be arbitrarily excluded when to so exclude it would violate any provision of the Constitution of the United States. *Nat. Council* v. *State Council,*

203 U. S. 153; *Securities Mut. Life Ins. Co.* v. *Prewitt*, 202 U. S. 249.

To exclude a railroad company from the domain of the State, after it has, with the permission of the State, purchased a railroad therein and is engaged in operating the same, would take its property without due process of law. *Ames* v. *Union Pac. R. R.*, 64 Fed. Rep. 170.

Where no property rights are concerned, the State may arbitrarily exclude a foreign corporation from its boundary, *Security Mut. Life Ins. Co.* v. *Prewitt*, 202 U. S. 257; *N. W. Life Ins. Co.* v. *Riggs*, 203 U. S. 255; *Hammond Packing Co.* v. *Arkansas*, 212 U. S. 322; but though the State may generally put such burdens upon such corporations as it sees fit, as a condition to continuing business therein, it cannot place arbitrary burdens upon a foreign railroad corporation which would operate to take its property without due process of law. *Smyth* v. *Ames*, 169 U. S. 469.

The distinction between an insurance company case and a case involving the right of a railroad company, lies in the fact that when a State permits a railroad company to acquire a railroad within its border, it impliedly agrees that it may utilize such property, and, because of the nature of the railroad business, it cannot exclude such corporation from its domain without taking this property. *Nat. Council* v. *State Council*, 203 U. S. 161; *Sea Board. Air Line Co.* v. *R. R. Commission*, 155 Fed. Rep. 803; *Chicago, R. I. & P. R. R.* v. *Swanger*, 157 Fed. Rep. 791; *Erie R. R.* v. *Pennsylvania*, 153 U. S. 628.

The act interferes with the regulation by Congress of interstate commerce. Under it the State can sue for and recover the tax wholly irrespective of the clause which forfeits the right of the corporation to do an intrastate business for the non-payment of the tax. *State* v. *Fleming*, 112 Alabama, 179.

The tax is placed upon the corporation as a unit, and is, therefore, inseparable. *Pickard* v. *Pullman Pal. Car Co.*, 117 U. S. 34; *Allen* v. *Pullman Co.*, 191 U. S. 177; *Crutcher* v. *Kentucky*, 141 U. S. 50.

If the tax was imposed only on intrastate business, and if the intrastate business of plaintiff in error was separable from its interstate business, it still would interfere with the control of interstate commerce by Congress, if, under the constitution and laws of Alabama, the intrastate business could not be abandoned without abandoning the interstate business. *Pullman Co.* v. *Adams,* 189 U. S. 420.

The plaintiff in error has the right, under the Federal Constitution, to do an interstate business in Alabama. *Pensacola Tel. Co.* v. *W. U. Tel. Co.,* 96 U. S. 1; *Horn Silver Mining Co.* v. *New York,* 143 U. S. 315; *Postal Telegraph Co.* v. *Adams,* 155 U. S. 695.

Plaintiff in error is a "person" within the meaning of the Fourteenth Amendment, *Pembina Mining Co.* v. *Pennsylvania,* 125 U. S. 181, and also "within the jurisdiction" of the State, *Blake* v. *McClung,* 172 U. S. 239.

*Mr. Alexander M. Garber,* Attorney General of the State of Alabama, and *Mr. Samuel D. Weakley,* with whom *Mr. Henry C. Selheimer* was on the brief for defendants in error in this case and in Nos. 451 and 466.[1]

The complaints do not show any contract between the State and plaintiffs in error, the obligation whereof is impaired. Whatever right to do business the foreign corporations acquired was a mere permit or license subject to revocation at will of legislature. *Conn. Mut. Life Ins. Co.* v. *Sprattley,* 172 U. S. 602; *Security Mut. Life Ins. C.* v. *Prewitt,* 202 U. S. 246.

No authority exists by which a domestic railroad company can sell to a foreign corporation. See *Cent. Transp. Co.* v. *Pullman Co.,* 139 U. S. 24; *Am. Lumber Co.* v. *T. V. R. Co.,* 45 So. Rep. 911.

The imposition of the tax complained of is not an unjust discrimination against foreign corporations and therefore is not a denial of the equal protection of the laws in violation of the Fourteenth Amendment.

---

[1] For decisions in Nos. 451 and 466, see p. 418, *post.*

It is undoubtedly true that appellants are persons within the jurisdiction of the State, within the meaning of the Fourteenth Amendment, and as such are entitled to the equal protection of the law. But they are not persons within the jurisdiction of the State because of any contract with the State, but simply because they are doing business in the State with the consent of the State and under authority of its laws. Every corporation doing business in a State other than that of its creation, with the consent and permission of that State, is a person within the jurisdiction of such State, whether that consent arises from contract or from mere license. *Santa Clara Co.* v. *So. Pac. R.*, 118 U. S. 394; *Charlotte &c. R. R.* v. *Gibbs*, 142 U. S. 386; *Minneapolis Ry. Co.* v. *Beckwith*, 129 U. S. 26; *Gulf, Col. &c. Ry. Co.* v. *Ellis*, 165 U. S. 150.

It is not a denial of the equal protection of the law to impose on a foreign corporation a tax for the privilege of doing business in the taxing State, when no such tax, or a tax of a different amount, is imposed on domestic corporations engaged in the same business. 19 Cyc. 1227 *et seq.;* Gray on Lim. of Tax. Power, § 1318; *Ducat* v. *Chicago*, 10 Wall. 410; *New York* v. *Roberts*, 171 U. S. 662; *Horn Silver Min. Co.* v. *New York*, 143 U. S. 305; *Fire Ass'n of Phila.* v. *New York*, 119 U. S. 110; *Commonwealth* v. *Milton*, 54 Am. Dec. 522; *Southern B. & L. Ass'n* v. *Norman*, 31 L. R. A. 41; *Hughes* v. *City of Cairo*, 92 Illinois, 339; *Scottish Un. Ins. Co.* v. *Herriott*, 77 Am. St. Rep. 548.

Laws which impose upon foreign corporations the same taxation and other restrictions as are imposed upon corporations of the taxing State by the States where such foreign corporations were created, do not infringe any provision of the Federal Constitution. *Fire Ass'n of Phila.* v. *New York*, 119 U. S. 110; *Home Ins. Co.* v. *Swigert*, 104 Illinois, 653; Gray on Lim. of Tax. Power, § 1314.

A State may impose such conditions upon permitting foreign corporation to do business within its limits as it may judge expedient; and may make the grant or privilege dependent

upon the payment of a specific license tax or a sum proportioned to the amount of its capital used within the State. *Parke, Davis & Co.* v. *Roberts,* 171 U. S. 659; *Pennsylvania R. Co.* v. *Wemple,* 138 N. Y. 1; *People* v. *Equitable Trust Co.,* 96 N. Y. 388; *Home Ins. Co.* v. *New York,* 134 U. S. 599.

The Federal Constitution imposes no restraint on the State in regard to unequal taxation. *Coulter* v. *Louisville & Nashville R. R. Co.,* 196 U. S. 599; *Pacific Express Co.* v. *Seibert,* 142 U. S. 339; *Davidson* v. *New Orleans,* 96 U. S. 97; *Merchants' Bank* v. *Pennsylvania,* 167 U. S. 461; *Bell's Gap Railroad* v. *Pennsylvania,* 134 U. S. 232; *Savannah &c. R. R.* v. *Savannah,* 198 U. S. 392; *Met. St. Ry.* v. *New York,* 199 U. S. 1; *St. Louis &c. R. Co. Case,* 132 Fed. Rep. 629; *Columbus S. R. Co.* v. *Wright,* 151 U. S. 470; *N. Y. Central & H. R. R.* v. *Miller,* 202 U. S. 593.

MR. JUSTICE DAY, after making the foregoing statement, delivered the opinion of the court.

The Supreme Court of Alabama placed its decision upon the ground that the act of March 7, 1907, should be sustained as a lawful tax, not upon the franchises of a foreign corporation, as property, but as a tax "to add to the license tax already required an additional privilege tax for the continued exercise of the corporate franchises in the State." 49 So. Rep. 408.

The errors assigned attack the validity of the act of March 7, 1907, upon grounds, among others, that it violates the Fourteenth Amendment of the Federal Constitution, in that it denies to the plaintiff the equal protection of the laws and deprives it of its property without due process of law.

The Fourteenth Amendment provides that "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

The important Federal question for our determination in this case is: When a corporation of another State has come into the taxing State, in compliance with its laws, and has therein acquired property of a fixed and permanent nature, upon which it has paid all taxes levied by the State, is it liable to a new and additional franchise tax for the privilege of doing business within the State, which tax is not imposed upon domestic corporations doing business in the State of the same character as that in which the foreign corporation is itself engaged?

The Federal Constitution, it is only elementary to say, is the supreme law of the land, and all its applicable provisions are binding upon all within the territory of the United States. Whenever its protection is invoked the courts of the United States, both state and Federal, are bound to see that rights guaranteed by the Federal Constitution are not violated by legislation of the State. One of the provisions of the Fourteenth Amendment thus binding upon every State of the Federal Union prevents any State from denying to any person or persons within its jurisdiction the equal protection of the laws. If this statute, as it is interpreted and sought to be enforced in the State of Alabama, deprives the plaintiff of the equal protection of the laws, it cannot stand.

The equal protection of the laws means subjection to equal laws, applying alike to all in the same situation. If the plaintiff is a person within the jurisdiction of the State of Alabama within the meaning of the Fourteenth Amendment, it is entitled to stand before the law upon equal terms, to enjoy the same rights as belong to, and to bear the same burdens as are imposed upon, other persons in a like situation.

That a corporation is a person, within the meaning of the Fourteenth Amendment, is no longer open to discussion. This point was decided in *Pembina Mining Co.* v. *Pennsylvania*, 125 U. S. 181, 188, wherein this court declared:

"The inhibition of the amendment that no State shall deprive any person within its jurisdiction of the equal protection

of the laws was designed to prevent any person or class of persons from being singled out as a special subject for discriminating and hostile legislation. Under the designation of person there is no doubt that a private corporation is included."

And see *Gulf, Colorado & Santa Fe Ry. Co.* v. *Ellis,* 165 U. S. 150, and cases cited on p. 154.

Is the plaintiff corporation a person within the jurisdiction of the State of Alabama? In the present case the plaintiff is taxed because it is doing business within the State of Alabama. The averments of the complaint, admitted by the demurrer, show it has acquired a large amount of railroad property by authority of and in compliance with the laws of the State; that it is subject to the jurisdiction of the courts of the State; that it has paid taxes upon its property, and also upon its franchises within the State; in short, that it came into the State in compliance with its laws, and at the time of the imposition of the tax in question had been for many years carrying on business therein under the laws of the State. We can have no doubt that a corporation thus situated is within the jurisdiction of the State. *Blake* v. *McClung,* 172 U. S. 239.

The argument on the part of the State of Alabama places much weight upon the cases in this court which have sustained the right of the State to exclude a foreign corporation from its borders and to impose conditions upon the entry of such corporations into the State for the purpose of carrying on business therein. That line of cases has been so amply discussed in the opinions and concurring opinions in the cases of *Western Union Telegraph Co.* v. *Kansas* and *Pullman Co.* v. *Kansas, ante,* pp. 1, 56, decided at the present term, that any extended discussion of them is superfluous now. It is sufficient for the present purpose to say that we are not dealing with a corporation seeking admission to the State of Alabama, nor with one which has a limited license, which it seeks to renew, to do business in that State; nor with one which has come into the State upon conditions which it has since violated. In the case at bar we have a corporation which has come into and is doing business

within the State of Alabama, with the permission of the State and under the sanction of its laws, and has established therein a business of a permanent character, requiring for its prosecution a large amount of fixed and permanent property, which the foreign corporation has acquired under the permission and sanction of the laws of the State. This feature of the case was dealt with by Mr. Justice Brewer, then a Circuit Judge, in the case of *Ames* v. *Union Pacific R. R. Co.,* 64 Fed. Rep. 165, 177, wherein he said:

"It must always be borne in mind that property put into railroad transportation is put there permanently. It cannot be withdrawn at the pleasure of the investors. Railroads are not like stages or steamboats, which, if furnishing no profit at one place, and under one prescribed rate of transportation, can be taken elsewhere and put to use at other places and under other circumstances. The railroad must stay, and, as a permanent investment, its value to its owners may not be destroyed. The protection of property implies the protection of its value."

Notwithstanding the ample discussion of the questions involved in the case of the *Western Union Telegraph Co.* v. *Kansas* and *Pullman Company* v. *Kansas,* to which we have already referred, we deem it only fair to the learned counsel for the State of Alabama to notice some of the cases which it is insisted have disposed of the question herein involved and maintained the right of the State to impose a tax upon a foreign corporation, lawfully within the State, for the privilege of doing business in the State, when no such tax, or one less burdensome, is imposed upon domestic corporations engaged in the same business. The first case referred to is *Ducat* v. *Chicago,* 10 Wall. 410, in which a tax was sustained upon a foreign insurance company which had come into the State upon complying with certain terms prescribed by the State, and was thereafter subjected to a tax on all their premiums, the statute declaring it unlawful in the companies otherwise to do business in the State. It is sufficient to say of that case.

that it arose before the Fourteenth Amendment had become part of the Federal Constitution, and that no reference is made in the opinion of the court to the Fourteenth Amendment, although the case was decided after that amendment went into effect.

In *New York* v. *Roberts*, 171 U. S. 658, 663, a tax was imposed upon the franchises, or business of corporations, with certain exceptions, computed upon the amount of capital stock employed within the State. It was pointed out by Mr. Justice Shiras, who delivered the opinion of the court, that the tax was imposed as well for New York corporations as for those of other States, and he said: "So that it is apparent that there is no purpose disclosed in the statute either to distinguish between New York corporations and those of other States to the detriment of the latter, or to subject property out of the State to taxation."

In *Horn Silver Mining Company* v. *New York*, 143 U. S. 305, 315, the tax imposed was applicable alike to corporations doing business in New York, whether organized in that State or not, and in the course of the opinion in the case Mr. Justice Field, speaking for the court, said: "It does not lie in any foreign corporation to complain that it is subjected to the same law with the domestic corporation."

In *Fire Association* v. *New York*, 119 U. S. 110, 119, a Pennsylvania corporation which was taxed in the State of New York was subjected to a license-fee, which license ran for a period of a year, and it was held that the State had the power to change the conditions of admission to the State, and to impose as a condition of doing business in the State, at any time or for the future, the payment of a new or further tax. Mr. Justice Blatchford, speaking for the court, said: "If it imposes such a license fee as a prerequisite for the future the foreign corporation, until it pays such license fee, is not admitted within the State, or within its jurisdiction. It is outside of the threshold, seeking admission, with consent not yet given."

We have adverted to these cases with a view of showing that

the precise point involved herein is not concluded by any of them. It would not be frank to say that there is not much said in the opinions in those cases which justifies the argument that the power of the State to exclude a foreign corporation, not engaged in interstate commerce, authorizes the imposition of special and peculiar taxation upon such corporations as a condition of doing business within the State. But none of the cases relied upon presents the question under the conditions obtaining in the case at bar. We have here a foreign corporation within a State, in compliance with the laws of the State, which has lawfully acquired a large amount of permanent and valuable property therein, and which is taxed by a discriminating method not employed as to domestic corporations of the same kind, carrying on a precisely similar business.

As we have already indicated, the discussion of the question herein involved has largely been anticipated in the recent cases from Kansas, involving the right to tax the Western Union Telegraph Company and the Pullman Company. Those cases are the latest declaration of this court upon the subject, and in one aspect of them really involve the determination of the case at bar. In the *Western Union Telegraph* case it was held that a State could not impose a tax upon an interstate commerce corporation as a condition of its right to do domestic business within the State, which tax included within its scope the entire capital of the corporation, without as well as within the borders of the State. The Kansas tax was sought to be sustained as a legal exaction for the privilege of doing domestic business within the State. It was held invalid because it violated the right secured by the Constitution of the United States, giving to Congress the exclusive power to regulate interstate commerce, and because it violated the due process clause of the Federal Constitution in undertaking to make the payment of a tax upon property beyond the borders of the State a condition of doing domestic business within the State. In that case the Fourteenth Amendment was directly applied in the due process feature. In this case we have an

application of the same Amendment, asserting the equal protection of the laws.

We, therefore, reach the conclusion that the corporation plaintiff, under the conditions which we have detailed, is within the meaning of the Fourteenth Amendment, a person within the jurisdiction of the State of Alabama, and entitled to be protected against any statute of the State which deprives it of the equal protection of the laws.

It remains to consider the argument made on behalf of the State of Alabama, that the statute is justified as an exercise of the right of classification of the subjects of taxation, which has been held to be entirely consistent with the equal protection of the laws guaranteed by the Fourteenth Amendment. It is argued that the imposition of special taxes upon foreign corporations for the privilege of doing business within the State is sufficient to justify such different taxation, because the tax imposed is different, in that the one imposed on the domestic corporation is for the privilege of being a corporation, whereas the one on the foreign corporation is for the privilege of such corporation to do business within the State. While reasonable classification is permitted, without doing violence to the equal protection of the laws, such classification must be based upon some real and substantial distinction, bearing a reasonable and just relation to the things in respect to which such classification is imposed; and classification cannot be arbitrarily made without any substantial basis. Arbitrary selection, it has been said, cannot be justified by calling it classification. *Gulf, Colorado & Santa Fe Ry.* v. *Ellis,* 165 U. S. 150, 155, 165; *Cotting* v. *Kansas City Stock Yards Co.,* 183 U. S. 79; *Connolly* v. *Union Sewer Pipe Co.,* 184 U. S. 540, 559.

It is averred in the complaint, and must be taken as admitted, that there are other corporations of a domestic character in Alabama carrying on the railroad business in precisely the same way as the plaintiff. It would be a fanciful distinction to say that there is any real difference in the burden imposed because the one is taxed for the privilege of a foreign

corporation to do business in the State and other for the right to be a corporation. The fact is that both corporations do the same business in character and kind, and under the statute in question a foreign corporation may be taxed many thousands of dollars for the privilege of doing, within the State, exactly the same business as the domestic corporation is permitted to do by a tax upon its privilege, amounting to only a few hundred dollars. We hold, therefore, that to tax the foreign corporation for carrying on business under the circumstances shown, by a different and much more onerous rule than is used in taxing domestic corporations for the same privilege, is a denial of the equal protection of the laws, and the plaintiff being in position to invoke the protection of the Fourteenth Amendment, that such attempted taxation under a statute of the State, does violence to the Federal Constitution.

The judgment of the Supreme Court of Alabama is therefore reversed, and the case remanded to that court for further proceedings not inconsistent with this opinion.

*Reversed.*

Dissenting: THE CHIEF JUSTICE, MR. JUSTICE McKENNA and MR. JUSTICE HOLMES.